STAMBAUGH v. REFUGIO SYNDICATE et al.

(District Court, S. D. New York. April 12, 1912.)

CORPORATIONS (§ 460*)—BORROWING MONEY—AUTHORITY—ULTRA VIRES.

Two thousand shares of the stock of a corporation having been subscribed and paid for, the subscribers signed a syndicate agreement to take the balance, appointing E. and W. managers. The subscribers failing to pay their subscriptions, E. and W. bought from the corporation the remaining shares, giving it their own note for $800,000 in payment. The corporation then arranged with them, as syndicate managers, and with a trust company, to deposit the note, and, as security, all of the certificates of stock of the corporation, the syndicate agreement, and certain other securities, pursuant to a scheme to sell certificates of participation in the note, the money received to be paid to the corporation. Participation certificates were sold to the amount of $290,000, leaving the corporation's interest in the note about $352,500, whereupon the corporation, in order to prevent the holders of the participation certificates from taking some action to enforce their interest, borrowed $300,000 from a mining company, with which it took up the outstanding participation certificates, and pledged the note to the lender, with certain other property as collateral. *Held* that, in the absence of fraud, the note given the mining company for the loan was valid, and not ultra vires of the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1813; Dec. Dig. § 460.*]

In Equity. Bill by Henry H. Stambaugh against the Refugio Syndicate and others. On demurrer to complaint. Sustained.

Hyman & Campbell, for complainant.

Wing & Russell (Philip W. Russell, of counsel), for respondents Consolidated Gold Fields of South Africa, Limited, and Thomas E. Wing.

HOLT, District Judge. These are demurrers to the complaint by the respondents the Consolidated Gold Fields of South Africa, Limited, and Thomas E. Wing, on the ground, substantially, that the complaint is without equity and states no cause of action. The suit is brought by a stockholder of a corporation, the Refugio Syndicate, suing in behalf of himself and of similarly situated stockholders. The relief prayed for is that a note for $300,000, executed by the respondent the Refugio Syndicate to the respondent the Consolidated Gold Fields of South Africa, Limited, be canceled; that the Consolidated Gold Fields of South Africa, Limited, be permanently enjoined from en-

forcing and obligation against the Refugio Syndicate, based upon said note; that the respondents be enjoined from selling or disposing of any property held as collateral security for said $300,000 note, particularly a note for $800,000, signed by George W. McElhiney and Ernest A. Wiltsee as syndicate managers, a contract between the Refugio Syndicate and McElhiney and Wiltsee, as syndicate managers, relating to the purchase by said syndicate managers from said Refugio Syndicate of 8,000 shares of the stock of the Refugio Syndicate, 10,-000 shares of the stock of the Refugio Syndicate, and 460 shares of the stock of the Upland Realty Company, all held as collateral to the $300,000 note. The complaint also demands that the Consolidated Gold Fields of South Africa, Limited, deliver to the respondent the Refugio Syndicate certificates for $100,000 of stock of the Oro Grande Mines Company received from the respondent the Refugio Syndicate. The complainant's claim, in substance, is that the note for $300,000 given by the Refugio Syndicate to the Consolidated Gold Fields of South Africa, Limited, is invalid because its execution was ultra vires, and that the note and the security given for it should be returned to the Refugio Syndicate.

The facts alleged in the complaint are extremely intricate. If the facts alleged are correct, this would appear to be a typical case of modern finance by a corporation promoter. Corporations, holding companies, syndicates, trustees, voting trusts, participation certificates, and all the usual devices for complicating the transactions and making it extremely difficult for creditors to understand what their rights are, appear, according to the complaint, to have been employed by McElhiney in the management of the business of the Refugio Syndicate. Many of the facts alleged in the complaint, however, appear to me to be entirely irrelevant to the real question of the rights of the Gold Fields Company. The essential facts, so far as the questions between the Refugio Syndicate and the Gold Fields Company are concerned, are as follows:

The Refugio Syndicate is a New Jersey corporation. It has an authorized capital of $1,000,000, consisting of 10,000 shares of $100 each. Two thousand of such shares were subscribed and paid for in cash; the complainant being one of such subscribers. The subscribers to the 2,000 shares signed a syndicate agreement, by which each agreed to take 4 additional shares for the one which he had paid for, thus subscribing for the remaining 8,000 shares. McElhiney and Wiltsee were made managers of the syndicate agreement. The subscribers, when their subscriptions became due, did not pay them. Thereupon McElhiney and Wiltsee, the syndicate managers, bought from the Refugio Syndicate the 8,000 shares in question, giving it their note for $800,000 in payment. The Refugio Syndicate then entered into an arrangement with McElhiney and Wiltsee, as syndicate managers, and with the Guardian Trust Company, under which it deposited with the Guardian Trust Company the note for $800,000, and, as security for it, all the certificates of stock of the Refugio Syndicate, amounting to 10,000 shares, the syndicate agreement, signed by the subscribers for the stock, and certain other securities. Then a scheme was arranged for the sale of what are called certificates

of participation in the $800,000 note: that is to say, to any person who would purchase any proportionate part of the $800,000 note, the Guardian Trust Company issued certificates of participation in the note for the amount paid, and the money so received, as I understand it, was paid to the Refugio Syndicate. Under this arrangement, participation certificates were sold to the extent of $538,500 on their face, but really for a much less amount, by reason of the fact that they were sold at a large discount. Prior to the maturity of the $800,000 note, calls were made on the syndicate subscribers, which were not honored; but after its maturity some of the subscribers made payments, aggregating $157,500, which amount was credited upon the note for $800,000 and distributed pro tanto among the holders of the participation certificates. This left $642,500 due upon the $800,000 note. There were outstanding participation certificates in the $800,000 note remaining due, amounting to about $290,000, so that the Refugio Syndicate's interest in the note was about $352,500, and the holders of participation certificates had an interest in the note of about $290,000.

Under these circumstances, the Refugio Syndicate negotiated a loan of $300,000 from the Gold Fields Company, which up to that time had had no connection with the Refugio Syndicate, or with McElhiney, or apparently with any of the mining companies or schemes with which he was connected. The Refugio Syndicate apparently feared that the holders of the participation certificates would take some action to enforce their interest in the $800,000 note. At all events, the Refugio Syndicate desired to have those participation certificates bought up and canceled. The Gold Fields Company was willing to loan the Refugio Syndicate $300,000 upon receipt of the $800,000 note, and the collateral with it, as collateral to the $300,000 note. The loan was made, and the $300,000 was substantially used to pay off the $290,000 of participation certificates. Whether such certificates were canceled, or were turned over to the Refugio Syndicate and kept alive, does not clearly appear. The result of this transaction was that the Refugio Syndicate, instead of having a $352,500 interest in the note of the syndicate managers, and the collateral connected with it, had its former interest of $642,500, and controlled the note entirely. So far as the Gold Fields Company was concerned, it held as collateral the entire amount due under the $800,000 note, amounting to $642,500, instead of the amount due to the Refugio Syndicate, which before the purchase of the participation certificates amounted to a little more than half the note. For this loan of $300,000 the Refugio Syndicate gave the Gold Fields Company a note for $300,000, and, as collateral to that note, the $800,000 note and the collateral to it, which had been deposited in the Guardian Trust Company. The $300,000 note having become due, and not having been paid, the Gold Fields Company advertised for sale the $800,000 note held as collateral, and thereupon this suit was brought to cancel the $300,000 note, and to recover the collateral, on the ground that the action of the Refugio Syndicate in giving such note, and in transferring such collateral to the Gold Fields Company, was ultra vires.

196 F.—10

This claim is based on the proposition that the Refugio Company was not originally liable on the $800,000 note. The syndicate managers and the subscribers to the syndicate were liable on that note to the Refugio Syndicate, and the argument of the plaintiff's counsel is that the Refugio Syndicate had no right to borrow money for the purpose of paying off the holders of the participation certificates, because the Refugio Syndicate was not liable to the holders of the participation certificates. But the Refugio Syndicate owned more than a half interest in the $800,000 note. Other interests were held by the holders of participation certificates. It was a question of business judgment for the directors of the Refugio Syndicate whether to acquire the interest of the participation certificate holders in that note, so as to control it exclusively themselves. In my opinion, the borrowing of money for the purpose of obtaining control of the claims of the holders of the participation certificates was not ultra vires. The bill contains elaborate allegations that McElhiney controlled the Refugio Syndicate; that its directors were his dummies; that he had a personal interest in having the participation certificates paid, because he owned some of them and had deposited them as collateral for a loan with the Park Bank, and for other reasons; that the Gold Fields Company knew of all the transactions relating to the $800,000 note, the arrangement with the Guardian Trust Company, the sale of the participation certificates, and all McElhiney's relations with the Refugio Syndicate. But there is no allegation in the complaint that the Gold Fields Company was guilty of any fraud, or had any other than a mere business interest in the loan. They received for the loan a note of $300,000, payable with interest, and there was transferred to them in absolute ownership certain stock of the Oro Grande Mines Company, in consideration of making the loan. The transaction being by corporations, no question of usury arises, and the transfer of the Oro Grande Company's stock in consideration of the loan was a mere business transaction.

Whatever rights the stockholders of the Refugio Syndicate have against McElhiney, if any, in my opinion have nothing to do with the rights of the Gold Fields Company. McElhiney is not a party to this action, and has had no opportunity to be heard in his own defense; but, if he has done anything for which he is subject to criticism by the stockholders of the Refugio Syndicate, that, in my opinion, is entirely immaterial in this case. The transaction, stripped of all its complicated features, is a loan of $300,000 by the Gold Fields Company to the Refugio Syndicate, for which a note was given, accompanied by collateral. The note, in my opinion, was a valid note. Not having been paid at maturity, its owner had a right to sell the collateral at auction.

My conclusion is that the demurrers should be sustained, and judgment given on them for the respondents, with costs.